420 A.2d 589

PEOPLES NATIONAL BANK OF SUSQUEHANNA
COUNTY, Pa.,

v.

Eldred M. HITCHCOCK and Donna Hitchcock, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed June 6, 1980.

Philip V. Mattes, Scranton, for appellants.

Frederick J. Meagher, Jr., Montrose, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from an order refusing to issue a rule to show cause why a petition to open a default judgment should not be granted.

On August 21, 1978, appellee filed a complaint in two counts, the first count demanding judgment for rent at the rate of $350 per month from November 15, 1977, for appellants' occupancy of certain property in Susquehanna County, the second count demanding judgment for possession of the property and the ejectment of appellants. As the basis of these demands, the complaint pleaded an agreement dated September 12, 1977, by the terms of which appellants had conveyed the property in question to appellee in partial satisfaction of certain outstanding debts. The agreement provided that appellants could not remain in possession of the property after November 15, 1977.

The complaint was served on appellants on August 23, 1978. The office address of the attorney on the complaint was a Binghamton, New York, address. On October 25, the attorney on the complaint withdrew, and a new attorney, from Montrose, Susquehanna County, Pennsylvania, entered his appearance on appellee's behalf and caused a default judgment in the amount of $4,560.67 to be entered against appellants for failure to answer the complaint.

Appellants filed their petition to open the judgment on December 4, 1978.[1] In the petition they allege:

---

1. The docket entries state that on Dec. 4, 1978, both a petition to open judgment and an amended petition to open judgment were filed.

2. Both parties at that time [at the time the complaint was filed] were represented by New York attorneys.

3. Mistakenly following New York practice, petitioner's New York attorney served respondent's New York attorney with the Answer attached hereto as Exhibit A, asserting failure of consideration of the underlying agreement.

4. Contrary to Pennsylvania practice, but in accord with New York practice, said Answer was not filed with the Prothonotary of Susquehanna County, by accident or mistake.

5. Fully apprised by virtue of having been served with same, petitioners intended to answer the Complaint, and with malice generated by other litigation between the parties, respondents, without notice or warning, entered a default on the state of the Susquehanna record in the above matter, and thereafter caused same to be issued to the Sheriff of Susquehanna County a Writ of Possession for the premises in question.

In the answer thus alleged to have been served on appellee's New York attorney, appellants pleaded that the September 12, 1977, agreement should not be enforced because appellee had materially breached it. Specifically, the answer alleges a breach of paragraph 11 of the agreement, which obligated appellee to pay certain taxes up to a total of $22,100.

Attached to appellants' petition to open was a form of rule to show cause why the petition should not be granted. However, the lower court did not issue the rule. Moreover, neither the docket nor the record indicates that appellee ever filed an answer to the petition to open. Instead, on the same day the petition to open was filed, the lower court held a hearing on the petition. At the hearing, appellant Eldred Hitchcock testified that appellee had violated paragraph 11

An examination of the record discloses that the only difference between the petition and the amended petition is that the amended petition included a prayer for an order that appellants be restored to possession of the property in question. For convenience, we shall simply refer in this opinion to "the petition" rather than to "the amended petition."

of the agreement, stating that he was "still being billed and levied personally" for the taxes that appellee had agreed to pay. Record at 16a. Hitchcock also testified that when he received appellee's complaint he immediately took it to his lawyer in New York state, since it had come from a New York lawyer, Record at 15a; that his lawyer prepared an answer, which he signed, *id.*; and that he did not hear anything about the case until the default judgment was entered against him in late October, *id.* At the conclusion of the hearing, the lower court refused to issue a rule to show cause why the petition to open should not be granted. Appellants filed exceptions to this order, but on March 12, 1979, after argument the court dismissed the exceptions, and made the order final. This appeal followed.

It is our opinion that the lower court should have issued a rule to show cause why the petition to open should not be granted. Had the court issued a rule, appellee would have been obliged to answer the petition. It may be granted that in some cases the facts will be so certain that a court may "in the exercise of its discretion refuse the issuance of a rule to show cause, and dismiss the petition [to open] without requiring that an answer be filed." *Carducci v. Albright Galleries, Inc.*, 244 Pa.Super. 48, 52, 366 A.2d 577, 579 (1976). However, this case is not such a case. Here, without an answer, the record is so incomplete that we cannot tell where the equities lie.

In *Ecumenical Enterprises, Inc. v. Nadco Const.*, 253 Pa. Super. 386, 390, 385 A.2d 392, 394, 395 (1978), we stated the following:

It is fundamental that a petition to open a default judgment is an appeal to the court's equitable powers and, absent a clear abuse of discretion, the court's decision will not be disturbed. *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973); *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Hersch v. Clapper*, 232 Pa.Super. 550, 335 A.2d 738 (1975). Moreover, it is equally well–settled that in an assumpsit action a petition to open should

not be granted unless three conditions coalesce: (1) the petition has been filed promptly; (2) the default is reasonably explained; and (3) a meritorious defense is shown. *Ruczynski v. Jesray Const. Corp.*, 457 Pa. 510, 326 A.2d 326 (1974); *McCoy v. Public Acceptance Corp.*, supra; *Jost v. Phoenixville Area School Dist.*, 237 Pa.Super. 153, 346 A.2d 333 (1975).

In refusing to issue a rule to show cause why appellants' petition to open should not be granted, the lower court did not decide whether the first of these conditions had been satisfied. Instead, it held that the petition was "inadequate on its face," Slip op. at p. 4, because it did not allege either a reasonable explanation for appellants' failure to answer the complaint or a meritorious defense to the complaint. In its opinion the court first discussed the absence of a meritorious defense, and then the absence of a reasonable explanation for failure to answer. Our discussion will therefore follow the same order.

The agreement of September 12, 1977, which the complaint alleges appellants breached, may be summarized in pertinent part as follows. Appellants, Lake–Mont Motors, Inc., and Hitchcock Estates, Inc., are in arrears on various mortgages and judgment notes held by appellee. In order "to amicably provide for the collection of the security for the aforesaid mortgage and judgment notes," Record at 28a, certain transactions are entered into by appellants, Lake–Mont, and Hitchcock Estates. By quit claim deed, all parcels of real estate subject to the mortgages are conveyed to appellee. Lake–Mont assigns and transfers to appellee various items of personal property, such as automobiles, and various intangibles, such as accounts receivable and its interest in a Chrysler Motor Company franchise for the sale of Chrysler automobiles. Hitchcock Estates assigns and transfers to appellee its interest in the Chrysler Motor Company franchise. And appellant Eldred Hitchcock transfers to appellee certain judgment notes payable to him in the amount of $4,000. In return, appellee releases from levy and writ of execution all personal property located at appel-

lants' farm; it grants appellants a leave to occupy their residence (conveyed, presumably, to appellee by quit claim deed), without payment of rent, until November 15, 1977; and it agrees to pay various state and federal taxes owed by Lake–Mont, "up to a total but no more than the amount of" $22,100, Record at 30a.

As has been indicated, at the hearing before the lower court appellant Eldred Hitchcock testified that appellee had "not paid all taxes [owed by Lake–Mont], I'm still being billed and levied personally for various taxes." Record at 16a. This testimony was consistent with paragraph 10 of appellants' answer to the complaint, which Hitchcock testified he signed, and which the petition to open alleges was served on appellee's New York attorney, i. e., the attorney on the complaint.[2]

Given this record, we are unable to agree with the lower court that the petition to open so plainly failed to allege a meritorious defense as to make it unnecessary to issue a rule to show cause, requiring appellee to file an answer to the petition. To be sure, Hitchcock's testimony was general; thus he did not say in what amount the taxes had not been paid, nor did he document his testimony, as, for example, by producing the bills he claimed to have received. Perhaps his testimony is without basis in fact. Nevertheless the testimony raises an issue that should have been resolved, first by appellee filing an answer, admitting or denying its failure to pay Lake–Mont's taxes as agreed, and then, if necessary, by the presentation of testimony, either by depositions or at a hearing. As the record stands now, with no answer, and therefore no denial, by appellee, so far as we can tell appellee has been permitted to keep a default judgment despite having breached the very agreement on the basis of which it got the judgment. This is not a satisfactory

2. Paragraph 9 of the answer refers to appellants' and appellee's agreement of September 12, 1977. Paragraph 10 of the answer alleges: "The agreement aforesaid in paragraph 11 was materially breached in that the Bank [appellee] has not complied with its commitment under said paragraph 11." Paragraph 11 is the paragraph of the agreement by which appellee agrees to pay the taxes owed by Lake–Mont.

condition for the record to be in. As we observed in *Alexander v. Jesray Constr. Co.*, 237 Pa.Super. 99, 104, 346 A.2d 566, 569 (1973):

> [T]he lower court need not try the case on the merits when considering an equitable petition to open a default judgment. *Cherry Steel Corp. v. Ashbourne Country Club*, 227 Pa.Super. 433, 323 A.2d 231 (1974). Our review convinces us that the appellants have set forth an arguable meritorious defense sufficient to justify relief, if proven at trial.

In holding that the petition to open failed to allege a reasonable excuse for appellants' failure to answer the complaint, the lower court appears to have accepted the allegations of the petition—which, as has been mentioned, were corroborated by appellant Eldred Hitchcock's testimony—that appellants' New York attorney, following New York practice, had prepared and served an answer on appellee's New York attorney, instead of filing the answer with the prothonotary of Susquehanna County.[3] After observing that Susquehanna County is on the border between New York and Pennsylvania, the court stated that

> this Court follows the Pennsylvania Rules of Civil Procedure and the New York State attorneys practicing here must comply with Pennsylvania rules, and it would be impossible for this Court to regulate its practice to conform to attorneys' private agreements or to follow New York State practice.

Slip op. at p. 5.

In *Ecumenical Enterprises, Inc. v. Nadco Const., supra*, this court had the opportunity to consider what might be a reasonable explanation for a default judgment. There, we said:

3. In its brief, appellants give a second explanation for why the answer was not filed with the prothonotary: appellee failed to include either a notice to defend or a notice to plead on the complaint as required by Pa.R.Civ.P. 1026. Appellants' Brief at 5. Appellants did not raise this point in the petition to open or at the hearing below, and we shall therefore not consider it here. *Penn State Mutual Insurance Company v. The Burglar's Enemy, Inc., et al.*, 263 Pa.Super. 89, 397 A.2d 10 (1979).

It is well settled that the power to open a default judgment entered as a result of mistake or oversight of counsel, is frequently exercised where the petition to open is promptly filed and a reasonable excuse for the default is presented. [Citations omitted.] *Alexander v. Jesray Constr. Co.*, 237 Pa.Super. at 103, 346 A.2d 566. *See also Moyer v. American Mobile Homes, Inc.*, 244 Pa.Super. 441, 368 A.2d 802 (1976).

More recently, in *Shainline v. Alberti Builders, Inc.*, 266 Pa.Super. 129, 403 A.2d 577 (1979), this court reviewed the cases and distinguished between unacceptable mistakes and acceptable mistakes. On the one hand, it was said, a mistake may be unacceptable because it involves the attorney's negligence or dilatoriness, a failure to act by one who knows its implications, or a deliberate decision not to defend. On the other hand, it was said, a mistake may be acceptable because it involves the misplacement or mishandling of papers through no fault of the attorney, or clerical oversight resulting in the attorney's being unaware of the suit from the outset. *See also Tronzo v. Equitable Gas Company and Graziano Construction Company*, 269 Pa.Super. 392, 410 A.2d 313 (1979).

Without question, appellants' New York attorney did act negligently by not consulting the Pennsylvania rules and thereby learning that the answer had to be filed with the prothonotary of Susquehanna County. Nevertheless, the negligence was of a different nature than the negligence found in the cases discussed in *Shainline*. *See McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Goldstein v. Graduate Hospital of University of Pa.*, 441 Pa. 179, 272 A.2d 472 (1971); *Triolo v. Philadelphia Coca Cola Bottling Co.*, 440 Pa. 164, 270 A.2d 620 (1970); *McDonald v. Allen*, 416 Pa. 397, 206 A.2d 395 (1965); *B. C. Y., Inc. Equipment Leasing v. Bukovich*, 257 Pa.Super. 121, 390 A.2d 276 (1978); *Van Horn v. Alper*, 253 Pa.Super. 524, 385 A.2d 462 (1978); *Jenkins v. Murray*, 250 Pa.Super. 519, 378 A.2d 1269 (1977); *Reliance Insurance Companies v. Festa*, 233 Pa.Super. 61, 335 A.2d 400 (1975); *King v. Fayette Aviation*, 226 Pa.Super. 588, 323 A.2d 286 (1974). In those cases, the

plaintiff entered a default judgment because no answer had been received; thus the plaintiff did not know whether the defendant had any interest in contesting the litigation, or if there was to be a contest, what the issues would be. Here, by contrast, it appears that appellee's attorney did receive an answer[4]—at least, so it appears as the record now stands. Appellee, therefore, knew that there was to be a contest, and what the issues would be. The significance of this distinction is illustrated by the Supreme Court's comments in *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971). There, the Court noted that the default judgment rules were designed to prevent a dilatory defendant from unreasonably thwarting the plaintiff's effort to establish a claim. "The rules are not primarily intended to provide the plaintiff with a means of gaining a judgment without the difficulties which arise from litigation." *Moyer v. Americana Mobile Homes, Inc.*, 244 Pa.Super. 441, 445, 368 A.2d 802 (1976), citing *Kraynick v. Hertz, supra.* To permit a plaintiff who has received the defendant's answer to the complaint to gain judgment by default might well constitute just such an abuse of the rules.

We believe a useful analogy may be drawn between the present case and the "snap" judgment cases, which also are concerned with possible abuse of the rules. *See, e. g., Safeguard Inv. Co. v. Energy Service Assoc.*, 258 Pa.Super. 512, 393 A.2d 476 (1978); *Ruggiero v. Phillips*, 250 Pa.Super. 349, 378 A.2d 971 (1977). In the typical snap judgment case, plaintiff takes judgment on the first day that the defendant is in default, without notice to the defendant's attorney, even though such notice is generally customary in the community. *Ruggiero v. Phillips, supra.* Taking a judgment in such circumstances is permitted by the rules and so is technically justifiable. We have nevertheless expressed our disapproval of such a judgment as "not serv[ing] the true purpose of a default judgment," *Ruggiero v. Phillips, supra,*

---

4. The date that appellee's attorney received the answer does not appear. However, the answer is dated September 8, 1978. It may, therefore, have been received within 20 days after the complaint was served, on August 23, 1978.

250 Pa.Super. at 354, 378 A.2d at 974, and have held that it should be opened where a meritorious defense appears and the petition to open was timely filed, *id.* We see no substantial distinction, so far as considerations of fairness or equity are concerned, between the conduct of an attorney who snaps a judgment knowing that his opponent expects prior notice, and the conduct of an attorney who takes judgment knowing that his opponent has submitted an answer to the complaint and believes that the case is therefore at issue. In both cases the attorney taking judgment exploits a belief that he knows to be mistaken (belief that community custom will be followed; belief that answer has been properly filed), and in both cases the exploitation has the effect of precluding his opponent from even proving a meritorious defense, which might have carried the day had not the judgment been taken and "the difficulties which arise from litigation," *Moyer v. Americana Mobile Homes, Inc., supra,* thereby avoided.

We recognize that in fact the analogy we have drawn between the present case and a snap judgment case may be inapposite. In fact there may have been no exploitation of a mistaken belief. The point is that as the record stands now, it suggests that exploitation may have occurred. The lower court should therefore have issued a rule to show cause, requiring appellee to answer the petition to open. Whether exploitation did occur could then be determined.

There remains for discussion the third condition that must be satisfied if a petition to open is to be granted, *i. e.,* that the petition was promptly filed. As has been mentioned, the lower court did not decide whether this condition had been satisfied.

 Timeliness of a petition to open a default judgment is measured from the date that notice is received of entry of default judgment. *Maruccio v. Houdaille Indus., Inc.,* 254 Pa.Super. 560, 386 A.2d 91 (1978). Appellants' petition did not allege that it had been promptly filed, nor did it allege any reason why it had not been filed until December 4, 1978, forty days after appellants had learned of the entry of the judgment. An unexplained delay of thirty–seven days has

been held too long. *Hatgimisios v. Dave's N. E. Mint, Inc.*, 251 Pa.Super. 275, 380 A.2d 485 (1977). *See also Texas and B. H. Fish Club v. Bonnell Corp.*, 388 Pa. 198, 130 A.2d 508 (1977) (thirty seven days; prejudice shown); *Schutte v. Valley Bargain Center, Inc.*, 248 Pa.Super. 532, 375 A.2d 368 (1977) (forty seven days too long). Here, however, some explanation for the delay appears in the record. Appellant Eldred Hitchcock testified that after he learned of the entry of judgment, he engaged a Pennsylvania attorney, Record at 16a, who sometime after being engaged, went out of town, *id.* Hitchcock did not testify as to the length of the attorney's absence, but we do note that at the hearing before the lower court, appellants were represented by this attorney's son. *Id.* Whether in the circumstances the petition to open was promptly filed may be more fully considered and determined by the lower court after appellee has filed an answer to the petition.

The order of the lower court is vacated, and the case is remanded with instructions to the lower court to issue a rule to show cause why appellants' petition to open judgment should not be granted, and for further proceedings consistent with this opinion.